UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RYAN REYNOLDS, individually and behalf of all others similarly situated,<br><br>                Plaintiff,<br><br>   v.<br><br>DIAMOND PET FOOD PROCESSORS OF CALIFORNIA, LLC, a California Limited Liability Company; DIAMOND PET FOOD PROCESSORS OF RIPON, LLC, a California Limited Liability Company; SCHELL & KAMPETER INC. dba DIAMOND PET FOODS, a Missouri Corporation; DON COLWELL JR., an individual with California citizenship; MARK FERGUSON, an individual with California citizenship; and DOES 1 to 100, inclusive,<br><br>              Defendants. | Case No. 2:15-cv-02118-JAM-AC<br><br>**ORDER GRANTING PLAINTIFFS' MOTION TO REMAND** |

    This case is before the Court on a motion to remand brought by Plaintiff Ryan Reynolds ("Reynolds") after defendants Schell & Kampeter, dba Diamond Pet Foods ("Schell"), Diamond Pet Food Processors of Ripon, LLC ("Diamond Ripon"), and Diamond Pet Food Processors of California, LLC ("Diamond California") (collectively

1

"Entity Defendants") removed the case to federal court.  Reynolds later added defendants Don Colwell Jr. ("Colwell") and Mark Ferguson ("Ferguson") (collectively "Individual Defendants").  For the reasons stated below, the Court grants the motion to remand.[1]

## I.   FACTUAL ALLEGATIONS AND PROCEDURAL BACKGROUND

Reynolds, on behalf of himself and a class of similarly situated California persons (the "Class"), filed his initial complaint on August 25, 2015, in San Joaquin County Superior Court against Entity Defendants (Doc. #1-1).  Entity Defendants removed the case to federal court on October 9, 2015 on the basis of diversity jurisdiction, pursuant to 28 U.S.C. § 1332(a), and federal question jurisdiction, pursuant to 28 U.S.C. § 1331(a) (Doc. #1).  Removal at 2.  Entity Defendants answered Reynolds' complaint on October 15, 2015 (Doc. #6).  Reynolds filed a first amended complaint ("FAC") on November 2, 2015, which added factual and legal allegations against Individual Defendants with respect to two causes of action (Doc. #8).  Reynolds then filed the pending motion to remand the case to state court on November 9, 2015 (Doc. #11), which was opposed by Entity Defendants and Individual Defendants (collectively "Defendants") (Doc. #13).

The FAC alleges thirteen causes of action related to a leave of absence policy that was allegedly applied to Defendants' employees in a discriminatory matter.  The thirteen causes of action are: (1) disability discrimination on behalf of Reynolds and the Class against Entity Defendants; (2) wrongful termination in

---

[1] This motion was determined to be suitable for decision without oral argument.  E.D. Cal. L.R. 230(g).  The hearing was scheduled for March 22, 2016.

2

violation of public policy, disability discrimination on behalf of Reynolds and the Class against Entity Defendants; (3) violation of California Family Rights Act ("CFRA") for retaliation in the form of termination of employment on behalf of Reynolds against Entity Defendants; (4) violation of CFRA for retaliation in the form of termination of paid health insurance benefits on behalf of Reynolds against Entity Defendants; (5) failure to provide reasonable accommodation on behalf of Reynolds and the Class against Entity Defendants; (6) failure to engage in FEHA interactive process on behalf of Reynolds and the Class against Entity Defendants; (7) intentional infliction of emotional distress on behalf of Reynolds against Defendants; (8) negligent supervision on behalf of Reynolds against Entity Defendants and Ferguson; (9) failure to issue wages by instrument payable on demand and without discount on behalf of Reynolds and against Entity Defendants; (10) failure to timely pay overtime wages on behalf of Reynolds and against Entity Defendants; (11) failure to timely pay wages due on behalf of Reynolds and against Entity Defendants; (12) failure to provide accurate itemized wage statement on behalf of Reynolds against Entity Defendants; and, (13) unfair competition on behalf of Reynolds and the Class against Entity Defendants.  Counts four and seven are particularly relevant to the pending motion because they are the only causes of action that arguably establish federal question jurisdiction.

## II. OPINION

A. <u>Legal Standard</u>

An improperly removed case may be remanded back to state court if the federal court lacks subject matter jurisdiction.  28 U.S.C.

1  § 1447(c) ("If at any time before final judgment it appears that
2  the district court lacks subject matter jurisdiction, the case
3  shall be remanded.").  There is a strong presumption against
4  removal jurisdiction, so a defendant who is seeking removal has the
5  burden of establishing that removal is proper.  Gaus v. Miles,
6  Inc., 980 F.2d 564, 566 (9th Cir. 1992).  Thus, "Federal
7  jurisdiction must be rejected if there is any doubt as to the right
8  of removal in the first instance."  Id. at 566.
9  A defendant seeking removal need only present a "short and plain
10 statement of the grounds for removal."  28 U.S.C. § 1446(a).  The
11 standard for such a statement of the grounds for removal is the
12 same standard used for analyzing the sufficiency of a complaint as
13 set forth in Federal Rule of Civil Procedure ("Rule") 8(a).  Dart
14 Cherokee Basin Operating Co., LLC v. Owens, 135 S.Ct. 547, 553
15 (2014).  A party may then supplement that petition with additional
16 evidence and argument in its opposition to a motion for remand.
17 Waller v. Hewlett-Packard Co., No. 11-CV-0454-LAB, 2011 WL 8601207,
18 at *2 (S.D. Cal. May 10, 2011).
19      B.   Analysis
20           1.   Federal Question Jurisdiction
21      Ordinarily, a court determines if there is federal question
22 jurisdiction pursuant to the well-pleaded complaint rule, which
23 states that subject matter jurisdiction exists when a federal
24 question is presented on the face of the complaint.  Aetna Health
25 Inc. v. Davila, 542 U.S. 200, 207 (2004).  However, "when a
26 federal statute wholly displaces the state-law cause of action
27 through complete preemption, the state claim can be removed."  Id.
28 Even if the claim is pleaded as one arising under state law, a

1  court must treat a completely preempted claim as being based on
2  federal law.  Id.
3       Defendants argue that the Court has subject matter
4  jurisdiction over this case because two of the causes of action
5  are completely preempted by federal statutes.  Removal ¶¶ 34-35.
6  Specifically, Defendants argue that the fourth and seventh causes
7  of action, though fashioned as state law claims, are in fact
8  preempted by provisions of the Employee Retirement Income Security
9  Act ("ERISA"), 29 U.S.C. § 1001, *et seq.* and the Comprehensive
10 Budget Reconciliation Act ("COBRA"), 29 U.S.C. § 1161, *et seq.*
11 Id. ¶¶ 33-34.  The Court will discuss each in turn.
12            a.   ERISA
13      Defendants allege that the fourth and seventh causes of
14 action are preempted by ERISA because these claims are about how
15 Reynolds' termination "affect[ed] his rights under Diamond's
16 health care benefits plan."  Removal ¶ 34.  Reynolds argues that
17 ERISA only preempts state law causes of action that allege that
18 "defendants' motive was to deprive plaintiff of insurance
19 benefits," not state law claims that simply list lost insurance as
20 an item of damages.  Reply at 2.
21      ERISA was "intended to ensure that employee benefit plan
22 regulation would be exclusively a federal concern."  Davila, 542
23 U.S. at 208.  ERISA may therefore completely preempt state law
24 causes of action.  Fossen v. Blue Cross & Blue Shield of Montana,
25 Inc., 660 F.3d 1102, 1107 (9th Cir. 2011) ("Conflict preemption
26 under ERISA . . . confers federal subject matter jurisdiction for
27 claims that nominally arise under state law.").  However, the Ninth
28 Circuit has held that "ERISA preempts only those state law claims

that arise out of the administration of a[n ERISA] covered plan." Ethridge v. Harbor House Rest., 861 F.2d 1389, 1404 (9th Cir. 1988).  As such, "[n]o ERISA cause of action lies . . . when the loss of pension benefits was a mere consequence of, but not a motivating factor behind, the termination of benefits." Id. at 1405; Fitzgerald v. Celergy Networks Inc., 67 F. App'x 390, 392 (9th Cir. 2003) ("Where, as here, a plaintiff's state law claims are, at most, tangentially related to any benefits plan, the underlying cause of action should not be removed from the state court.").  Thus, ERISA does not preempt state law wrongful discharge or discrimination claims simply because a plaintiff seeks recovery of benefits allegedly owed pursuant to a valid ERISA plan. Karambelas v. Hughes Aircraft Co., 992 F.2d 971, 974 (9th Cir. 1993) ("[I]f the loss of ERISA benefits was a result of rather than a motivation for a wrongful discharge, there was no cause of action under ERISA.").

    Defendants attempt to turn Reynolds' state law claims into federal questions by arguing that the few scattered references to "benefits" in the fourth and seventh causes of action render those two claims preempted by ERISA.  Opp. at 6-7.  But the references to "benefits" are limited and general, especially when read in the context of the entire FAC.  See, e.g., Fitzgerald, 67 F. App'x at 391 (finding that plaintiff referred to "benefits" generally and only a limited number of times in the complaint, which was "replete" with state law accusations).  The gravamen of Reynolds' FAC is that Defendants engaged in disability discrimination and retaliation against Reynolds and the Class in violation of California state law.

1    Importantly, Reynolds does not allege that the elimination of
2 ERISA benefits motivated Defendants to terminate his employment –
3 an allegation that may have been sufficient to preempt his
4 nominally state law causes of action.  See, e.g., Felton v.
5 Unisource Corp., 940 F.2d 503-04, 508 (9th Cir. 1991) (finding that
6 ERISA preempted state law causes of action because plaintiff
7 alleged that Defendants fired the plaintiff *in order to* avoid
8 paying medical insurance benefits as required by ERISA).  Instead,
9 Reynolds simply lists the loss of benefits as one part of his
10 overall damages that resulted from Defendants' alleged retaliation.
11 FAC ¶ 77 ("As a proximate results of defendants' retaliatory
12 actions against plaintiff, . . . plaintiff has suffered the loss of
13 the paid health insurance benefits he otherwise would have
14 received.").  Indeed the only reasonable way to read the fourth
15 cause of action is that Reynolds is alleging that Defendants
16 retaliated against him for taking medical leave protected by the
17 CFRA: "in retaliation for having taken protected medical leave,
18 DIAMOND unlawfully terminated plaintiff's paid health insurance
19 benefits."  Id. ¶ 76.  The seventh cause of action similarly
20 identifies lost benefits as one of several damages that resulted
21 from Defendants' allegedly tortious acts.  Id. ¶¶ 100, 102-103.
22 Reynolds does not allege that Defendants engaged in these tortious
23 acts in order to deny him the benefits owed under his ERISA plan.
24    Thus, taken in the context of the entire FAC, it is clear that
25 the lost benefits are "a consequence of plaintiff's larger claim of
26 retaliatory termination, rather than [] a motivating factor for
27 termination, as required for an ERISA claim."  Sturman v. Cooper
28 Companies, Inc., No. C-93-02227-VRW, 1993 WL 356893, at *1 (N.D.

Cal. Sept. 3, 1993). At the very least, Defendants have failed to carry their burden of demonstrating clear grounds for why the fourth and seventh causes of action are preempted by ERISA. Gaus, 980 F.2d at 566 ("Federal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance."). ERISA does not preempt Reynolds's claims and does not thereby confer federal question jurisdiction.

        b.   COBRA

Defendants also allege in their notice of removal that the fourth and seventh causes of action are preempted by COBRA because these two causes of action "turn on the question of whether Defendants had any obligation to continue health care coverage for Plaintiff at the time his employment ended." Removal ¶ 33. Reynolds' motion and Defendants' opposition do not address this issue. But Reynolds argues in his reply that "COBRA does not, in any of its language, purport to preempt claims which are not alleged to be COBRA claims." Reply at 3.

Reynolds is correct that COBRA does not have preemptive force. The Ninth Circuit has clearly held, after analyzing the text and legislative history of COBRA, that "the COBRA provisions . . . do not preempt state law. Radici v. Associated Ins. Companies, 217 F.3d 737, 745 (9th Cir. 2000). Thus, the claims raised in the fourth and seventh causes of action are not preempted by COBRA and do not establish federal question jurisdiction. Since the Court has already rejected ERISA preemption, there are no grounds for subject matter jurisdiction pursuant to 28 U.S.C. § 1331(a).

///

///

2.  <u>Diversity Jurisdiction</u>

Entity Defendants – the three defendants listed in the original Complaint – initially removed this case to federal court on the basis of diversity jurisdiction pursuant to 28 U.S.C. § 1332(a). Removal at 3-5. After adding Individual Defendants in the FAC, Reynolds alleges that diversity jurisdiction is improper for two reasons. First, Reynolds argues that Schell is a citizen of California and, since Schell is an owner of Diamond California and Diamond Ripon (collectively "LLC Defendants"), the LLC Defendants are also California citizens. Mot. at 4-6. Second, Reynolds argues that Ferguson and Colwell are California citizens and therefore defeat diversity jurisdiction. <u>Id.</u> at 6-8. In opposition, Defendants argue that Schell is not a California citizen and that the Court should deny joinder of Ferguson and Colwell because the FAC was improperly filed. Opp. at 8-15.

a.  <u>Schell's Citizenship</u>

A corporation is a citizen of the state in which it is incorporated and the state in which it has its principal place of business. 28 U.S.C. § 1332(c)(1). Reynolds asks the Court to apply a "substantial predominance" test to determine Schell's principal place of business. Mot. at 5. But Defendants are correct that Reynolds' proposed test is outdated law. The "substantial predominance" test was replaced with the "nerve center" test. <u>Hertz Corp. v. Friend</u>, 559 U.S. 77, 92-93 (2010) ("the application of a more general business activities test has led some courts . . . to look . . . incorrectly at the State itself, measuring the total amount of business activities that the corporation conducts there and determining whether they are

1  'significantly larger' than in the next-ranking State.").

> We conclude that 'principal place of business' is best read as referring to the place where a corporation's officers direct, control, and coordinate the corporation's activities. It is the place that Courts of Appeals have called the corporation's 'nerve center.' And in practice it should normally be the place where the corporation maintains its headquarters—provided that the headquarters is the actual center of direction, control, and coordination, i.e., the 'nerve center,' and not simply an office where the corporation holds its board meetings.

Id. Thus, Schell is a citizen of the state in which it is incorporated and the state in which its nerve center is located.

The evidence before the Court demonstrates that Schell is a citizen of Missouri. Schell was incorporated and is headquartered in Missouri, where "all corporate level functions, including all corporate officers," are located. Schell Decl. ¶¶ 4-6. Thus, since Schell is a citizen of Missouri and Reynolds is a citizen of California, diversity jurisdiction based on Schell's citizenship would be proper. However, the Court must also consider the citizenship of the additional defendants.

b.  The FAC

Reynolds' FAC added several factual and legal accusations against Ferguson and Colwell. Reynolds alleged that Individual Defendants "terminated plaintiff and stripped him of his paid health insurance benefits." FAC ¶ 36. Reynolds also added both Ferguson and Colwell as defendants for the seventh cause of action for intentional infliction of emotional distress and Ferguson to the eighth cause of action for negligent supervision. FAC at 15-18. Neither party disputes that Individual Defendants are California citizens and that, if they were properly joined in the FAC, then diversity jurisdiction would be improper because

1 Individual Defendants would share California citizenship with
2 Reynolds.  Thus, the only remaining issue is whether Reynolds
3 properly filed his FAC.
4     A party is allowed to amend their pleadings once as a matter
5 of course within 21 days after service of a responsive pleading.
6 Fed. R. Civ. P. 15(a)(1)(B).  However, "[i]f after removal the
7 plaintiff seeks to join additional defendants whose joinder would
8 destroy subject matter jurisdiction, the court may deny joinder,
9 or permit joinder and remand the action to the State court."  28
10 U.S.C. § 1447(e) ("Section 1447").  Section 1447 provides district
11 courts with broad discretion.  <u>Gunn v. Wild</u>, No. C-01-4320 VRW,
12 2002 WL 356642, at *3 (N.D. Cal. Feb. 26, 2002); <u>Righetti v. Shell
13 Oil Co.</u>, 711 F.Supp.531, 533 (N.D. Cal. 1989) ("[S]ection 1447(e)
14 is permissive, and grants the court broad discretion to allow
15 amendment even where remand may result.").  Courts consider
16 multiple factors in ruling on an amendment made pursuant to
17 Section 1447, including:

> (1) whether the party sought to be joined is needed for just adjudication and would be joined under Federal Rule of Civil Procedure 19(a); (2) whether the statute of limitations would preclude an original action against the new defendants in state court; (3) whether there has been unexplained delay in requesting joinder; (4) whether joinder is intended solely to defeat federal jurisdiction; (5) whether the claims against the new defendant appear valid; and (6) whether denial of joinder will prejudice the plaintiff.

<u>IBC Aviation Servs., Inc. v. Compania Mexicana de Aviacion, S.A. de C.V.</u>, 125 F.Supp.2d 1008, 1011 (N.D. Cal. 2000); <u>see also Palestini v. Gen. Dynamics Corp.</u>, 193 F.R.D. 654, 658 (S.D. Cal. 2000).
These factors, considered as a whole, weigh in favor of permitting

Reynolds to file his FAC.

With respect to the first factor, Defendants argue that Individual Defendants are not necessary parties under Rule 19 because resolution of Reynolds' claims against Individual Defendants is not necessary to resolve the remaining claims against Entity Defendants. Opp. at 12. However, "when evaluated as part of the 28 U.S.C. § 1447(e) determination, a court also must examine whether the non-diverse defendant sought to be joined is 'tangentially related to the cause of action.'" McCarty v. Johnson & Johnson, No. 1:10-CV-00350, 2010 WL 2629913, at *8 (E.D. Cal. June 29, 2010) (citing IBC Aviation Servs., 125 F.Supp.2d at 1012 ("Courts disallow joinder of non-diverse defendants where those defendants are only tangentially related to the cause of action or would not prevent complete relief."). Here, Individual Defendants are not tangentially related to the causes of action in the FAC. Individual Defendants are alleged to have terminated Reynolds' employment and health insurance in accordance with Entity Defendants' express policies. FAC ¶ 36. Though the addition of the Individual Defendants is not necessary to render judgment in all of the causes of action in this case, Individual Defendants are not tangentially related to the alleged wrongdoing. Thus, this factor weighs, though slightly, in favor of Reynolds.

As for the second factor, both parties agree that the applicable statute of limitations in this case is two years. Opp. at 12; Reply at 6. Several events alleged in the FAC occurred more than two years prior to the filing of the Motion and to the issuing of this Order. Imai Decl. ¶¶ 5-6. Thus, the Court finds that this factor weighs in favor of Reynolds.

As for the third factor, Defendants concede that Reynolds "did not unduly delay seeking amendment." Opp. at 12. In fact, Reynolds filed within the twenty-one day time period established by Rule 15(a). Thus, this factor weighs in favor of Reynolds.

The fourth factor also cuts against Defendants. Defendants argue that Reynolds had an improper motive when amending the complaint; namely, "to defeat federal subject matter jurisdiction." Opp. at 13. Though Reynolds' motive is relevant, "[s]uspicion of diversity destroying amendments is not as important now that § 1447(e) gives courts more flexibility in dealing with the addition of such defendants." IBC Aviation Servs., 125 F.Supp.2d at 1012. The Court agrees with the IBC Aviation court that it should "decline[] to impute an improper motive to Plaintiff simply because Plaintiff seeks to add a non-diverse defendant post-removal." Id. Additionally, there is no evidence that Reynolds filed this motion for the improper purpose of delaying the proceedings. As such, this factor weighs in favor of Reynolds.

The fifth factor asks whether the claims against the new defendants appear valid. Defendants argue that the new claims for intentional infliction of emotional distress against both Individual Defendants and the claim for negligent supervision against Ferguson "are without merit and unlikely to survive a motion for summary judgment." Opp. at 13. Specifically, Defendants argue that "emotional injuries arising from such personnel activity fall within the normal risk of employment and, therefore, are subject to the exclusive remedies under the [California Worker's Compensation Act ("CWCA")]." Id. at 14. Defendants further argue that Reynolds' allegations fail to meet

13

the elements of either tort. <u>Id.</u> n.7. The Court disagrees. Similar arguments were rejected in <u>Khoshnood v. Bank of Am.</u>, No. CV 11-04551 AHM FFMX, 2012 WL 751919 (C.D. Cal. Mar. 6, 2012).

    First, California law "does not prohibit all emotional distress causes of action against an employer, but only those based on conduct that is a normal risk of the employment relationship." <u>Fretland v. Cty. of Humboldt</u>, 69 Cal.App.4th 1478, 1492 (1999). Thus, an intentional infliction of emotional distress claim based on discrimination is not preempted by the CWCA. <u>Khoshnood</u>, 12 WL 751919 at *6. Additionally, Reynolds has properly alleged the elements of a cause of action for intentional infliction of emotional distress. "Under California law, to state a claim for intentional infliction of emotional distress, the defendant's conduct must be outrageous, i.e., beyond all bounds of decency." <u>Clinco v. Roberts</u>, 41 F.Supp.2d 1080, 1084 (C.D. Cal. 1999). Here, the conduct alleged in this case is more extreme than in the cases cited by Defendants. In <u>Clinco</u>, for example, the alleged outrageous behavior was comprised of sending faxes to the plaintiff advising him to contact his insurance company. <u>Clinco</u>, 41 F.Supp.2d at 1084 ("To the extent this conduct is inappropriate, as a matter of law, it is no more than a petty oppression or annoyance"). The behavior alleged in this case is more similar to the conduct alleged in <u>Khoshnood</u>. <u>Khoshnood</u>, 2012 WL 751919, at *7 (including Plaintiff's allegation that defendants refused to let him have time away from work to meet with the police after his home had been burglarized). As such, this factor does not weigh against Reynolds.

    Finally, the last factor regarding prejudice to the plaintiff

in not allowing joinder weighs in favor of amendment.  As discussed above, not permitting amendment at this point may impact Reynolds' ability to file timely claims and therefore receive relief against Individual Defendants.

Thus, on balance, the six factors weigh in favor of granting Reynolds leave to file his FAC.  Given that the FAC properly joined two diversity-destroying defendants, removal based on diversity jurisdiction is inappropriate.  Since the Court has already found that there is no federal question jurisdiction, the Court lacks subject matter jurisdiction in this case and grants Reynolds' motion for remand.

### III.   ORDER

For the reasons set forth above, the Court GRANTS Reynolds' motion to remand this case back to the San Joaquin County Superior Court.

IT IS SO ORDERED.

Dated: April 28, 2016

JOHN A. MENDEZ,
UNITED STATES DISTRICT JUDGE